UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE KING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12 CV 002 CDP |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Antoine King is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri.  King was convicted by a jury of two counts of first-degree murder, two counts of armed criminal action, one count of first-degree robbery, and one count of first-degree assault.  He received a sentence of life imprisonment without the possibility of parole for each murder count, 30 years' imprisonment for each count of armed criminal action, 30 years' imprisonment for the robbery, and 15 years' imprisonment for the assault.

This matter is before the Court on King's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  King raises ten grounds for relief.  One of those ten grounds is procedurally defaulted, and the other nine grounds fail on the merits.  I will therefore deny his petition for the writ.

## I.    **Factual Background**

The evidence presented at trial showed that on August 4, 1997, co-defendant Cleveland Jackson was on the phone in his basement, speaking to someone about plans to rob a person named Dennis.  Cleveland Jackson's cousin, Enoch Bolden, was also in the basement and overheard Jackson's end of the conversation. Bolden testified at trial that the other person on the phone was "Twan," the petitioner, and they planned to meet up with another man named "Jet" – later identified as Christopher Ford – to commit a robbery that night.  Bolden said that Jackson was picked up from the house that night and left to commit the robbery.

The three men – Cleveland Jackson, petitioner Antoine King, and Christopher Ford – arrived at the apartment building where Dennis McAlister and his wife, Tracy McAlister, resided.  They got into the locked building when Kenyon Jackson, another resident, opened the door to walk his girlfriend out to her car.  Kenyon Jackson testified that the three men rushed by him and went inside. Adrian McAlister – Dennis McAlister's daughter, who was ten years old at the time – testified that the three men burst through the door of the McAlisters' apartment, armed with guns.  They ordered Dennis McAlister to get on the living room floor and dragged Tracy McAlister out of the bedroom and into the living room.  They ordered her on the ground, and she laid down and pulled a comforter off the couch to cover herself and Adrian McAlister.  Dennis McAlister stated

numerous times, "Don't hurt my pregnant wife and daughter."  He also said, "Chris, why it got to be like this?"

When the McAlisters were on the ground, the gunmen shot Dennis McAlister three times and Tracy McAlister four times.  Adrian McAlister was not injured.  The men left the apartment, and on their way out, they ran past Kenyon Jackson again.  Adrian stayed under the blanket for some time before calling her mother for help, and when the police arrived, she gave a description of the gunmen.  She later identified King and Cleveland Jackson in lineups.

Cleveland Jackson, King, and Ford returned to Cleveland Jackson's home. They went into the basement and changed their clothes, and they divided the money they had in their pockets, which was close to $15,000.  They gave Enoch Bolden, who was still in the basement, $250 and a gold chain, which he later pawned.  Cleveland Jackson also said he needed to get rid of two pistols, and he gave them to Bolden.  Bolden took the guns and discarded two bullets in a park on his way home.  Later, Cleveland Jackson contacted Bolden to see if he still had the weapons.  By that time, Bolden had heard about the murders and assumed that Cleveland Jackson, King, and Ford committed them, so he contacted a St. Louis County detective to turn in the weapons.  He met with St. Louis City homicide detectives at that time and gave an interview.

The bullets recovered from the victims' bodies were tested and found to be fired from the two weapons turned in by Bolden – a Jennings .22 long rifle calibered semi-automatic pistol and a Lorcin .380 automatic calibered semi-automatic pistol. The police also found a note at the scene with "Twan R. King" written on it, along with Antoine King's address. There was testimony that Dennis McAlister had been seen with Ford months before the incident, and that he knew King from growing up together. King was also seen with Cleveland Jackson on occasion.

## II.   **Procedural Background**

King was charged by indictment with two counts of first-degree murder, two counts of armed criminal action, one count of first-degree robbery, and one count of first-degree assault. King was tried with co-defendant Cleveland Jackson, but the trial court granted Christopher Ford's motion to sever. At trial, in addition to the evidence presented by the state as explained above, the defendants presented witnesses in their defense, including alibi witnesses for the night of the incident.

The jury found King guilty on all six charges. At the penalty phase of the capital case, the jury assessed punishment as life imprisonment without the possibility of parole on the first-degree murder counts. The judge then sentenced King to life imprisonment without the possibility of parole for each murder count, 30 years' imprisonment for each count of armed criminal action, 30 years'

imprisonment for the robbery, and 15 years' imprisonment for the assault.  All five sentences were to run consecutively.

King appealed his conviction to the Missouri Court of Appeals, arguing that: (1) the trial court erred in permitting Enoch Bolden to testify and refusing to grant King's request for a continuance related to this testimony; (2) the trial court erred in excluding King's evidence that Adrian McAlister failed to correctly identify Christopher Ford in a lineup; (3) the trial court erred in excluding King's evidence that Adrian McAlister identified two different people in lineups that both contained King; (4) the trial court erred in allowing Bolden to testify about the reasons for his request to be placed in witness protection; (5) the trial court erred in excluding evidence that government witness Mark Smith lied under oath in a previous trial; (6) there was insufficient evidence to support the first-degree murder convictions; and (7) the trial court erred in allowing Adrian McAlister's testimony that her father said, "Don't hurt my pregnant wife."  The Missouri Court of Appeals affirmed the conviction in a per curiam unpublished opinion on January 16, 2001.  *State v. King*, 41 S.W.3d 528 (Mo. Ct. App. 2001) (Resp. Exh. E).

On July 23, 2001, Barnes filed a *pro se* motion in the trial court for post-conviction relief under Missouri Rule 29.15.  Counsel was appointed to represent King, and an amended motion for post-conviction relief was filed on July 24,

2003.  The amended motion raised sixteen claims of ineffective assistance of counsel: (1) trial counsel failed to cross-examine Adrian McAlister regarding her selection of someone other than King from a photo lineup; (2) trial counsel failed to call Demetrious Sanders to testify regarding a conversation he had with Kenyon Jackson, in which Jackson provided information contrary to his trial testimony; (3) trial counsel failed to call Quentin Womack as an alibi witness; (4) trial counsel failed to call David Stokely as a defense witness; (5) trial counsel failed to object when Kenyon Jackson suggested that he was in future danger from the defendants; (6) trial counsel failed to object to the state's questions that vouched for Enoch Bolden's truthfulness; (7) trial counsel failed to call Evelyn Harris as an alibi witness; (8) trial counsel failed to demonstrate that King was not residing at the address found on a piece of paper at the victims' residence; (9) trial counsel failed to supply the Court of Appeals with plaintiff's exhibit 3 from the suppression hearing and state's exhibit 87; (10) trial counsel failed to make an offer of proof regarding Adrian McAlister's misidentification of Christopher Ford; (11) trial counsel failed to object to Enoch Bolden's testimony regarding his desire to be placed in witness protection and failed to renew the motion to sever when this information was elicited; (12) trial counsel failed to call King to testify on his own behalf; (13) trial counsel failed to ensure that King was present for parts of the voir dire, including the exercise of strikes for cause and peremptory challenges;

(14) trial counsel impermissibly waived King's rights to a speedy trial; (15) trial counsel failed to safeguard King's rights to a fair trial before a fair and impartial judge; and (16) appellate counsel failed to assert on appeal that the trial court erred in declining to sever King's trial from Cleveland Jackson's.  The motion court held an evidentiary hearing and denied all of King's claims on July 28, 2010.

King appealed the denial of his motion to the Missouri Court of Appeals, asserting four arguments: (1) the motion court erred in denying his ineffective assistance of trial counsel claim for failing to cross-examine Adrian McAlister regarding her previous identification of someone other than King in a photo lineup as the perpetrator; (2) the motion court erred in denying his ineffective assistance of trial counsel claim for failing to call Quentin Womack as an alibi witness; (3) the motion court erred in denying his ineffective assistance of trial counsel claim for failing to object to testimony from Kenyon Jackson and Enoch Bolden regarding their fear of retaliation from defendants; and (4) the trial court erred in denying his ineffective assistance of appellate counsel claim for failing to appeal the denial of King's motion to sever.  On May 24, 2011, the Missouri Court of Appeals affirmed the denial of King's post-conviction motion.  *King v. State*, 341 S.W.3d 806 (Mo. Ct. App. 2011) (Resp. Exh. K).

On March 3, 2012, King filed a motion with the Missouri Court of Appeals for recall of the mandate because of a conflict of interest of Judge Gary Gaertner,

who sat on the panel of his post-conviction appeal. The court granted the motion and vacated its earlier opinion, and it resubmitted the appeal to a new panel on April 2, 2012. On April 10, 2012, the new panel of the Missouri Court of Appeals again affirmed the denial of King's post-conviction motion. *King v. State*, 364 S.W.3d 260 (Mo. Ct. App. 2012) (Resp. Exh. J).

## III.  **Grounds Raised**

King now seeks federal habeas corpus relief, asserting the following ten grounds:

(1)    The trial court erred in permitting the hearsay testimony of Enoch Bolden regarding telephone conversations between Cleveland Jackson and another person because it violated the Confrontation Clause, and he received ineffective assistance of appellate counsel for failing to raise this claim on direct appeal;

(2)    His right to confront witnesses was violated by the trial court's decision to allow Enoch Bolden to testify and to deny King's motion for a continuance based on this testimony, and the state committed prosecutorial misconduct for failing to produce letters written by Bolden in advance of his testimony;

(3)    His right to confront witnesses was violated by the trial court's exclusion of King's evidence regarding Adrian McAlister's misidentification of former co-defendant Christopher Ford;

(4)    His right to confront witnesses was violated by the trial court's exclusion of King's evidence regarding Adrian McAlister's misidentification of King;

(5)    His right to confront witnesses was violated by the trial court's exclusion of King's evidence that Mark Smith lied under oath in a different trial;

(6)    There was insufficient evidence of King's guilt as to the first-degree murder charges;

(7)    King's trial counsel was ineffective for failing to call Quentin Womack as an alibi witness;[1]

(8)    King's trial counsel was ineffective for failing to object to Kenyon Jackson's testimony that he feared the defendants and to Enoch Bolden's testimony that he entered the witness protection program because of a fear of retaliation from the defendants;

(9)    King's trial counsel was ineffective in cross-examining Adrian McAlister by failing to show her a lineup in which she had previously identified someone other than King as the perpetrator; and

(10)   All of the judges on King's original panel for his post-conviction appeal – Judges Gary Gaertner, Patricia Cohen, and Mary Kay Hoff – should have recused themselves from the re-hearing of King's appeal because of Judge Gaertner's conflict of interest.

## IV.    **Discussion**

Respondent argues that Count 1 is procedurally barred because King failed to properly exhaust his state remedies.[2]  Regarding the remaining grounds, respondent argues that they fail on the merits.

### Exhaustion of Remedies and Procedural Bar: Ground 1

---

[1]In King's first amended petition, filed May 17, 2012, he included an additional allegation, labeled as Ground 8: he received ineffective assistance of trial counsel for failing to make an offer of proof regarding Adrian McAlister's misidentification of former co-defendant Christopher Ford.  However, he removed this ground when he filed his second amended petition on August 30, 2012.  He also filed a motion to delete Ground 8 from his first amended petition on January 11, 2013, which I will grant.  This claim therefore will not be considered in his motion for relief.

[2]Respondent argues that Ground 8 of King's amended petition is also procedurally barred, but because King withdrew that claim in his second amended petition, I need not consider it.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  Under Missouri law, "allegations of trial court error, reviewable on direct appeal, are not cognizable in a post-conviction motion." *Oden v. State*, 320 S.W.3d 198, 201 (Mo. Ct. App. 2010).  Failure to raise a claim in a post-conviction appeal results in abandonment of that claim. *Sweet*, 125 F.3d at 1150 (citing *Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996)).

A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Sweet*, 125 F.3d at 1151 (citation omitted) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)).  "Fairly present" means that state prisoners are required to "'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' . . . ." *Id.* at 411-12 (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)).  A state law claim raised in state

- 10 -

court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id*. at 412 (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)).

The Supreme Court has held that a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  The Court explained that "'the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id*. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Furthermore, to establish actual prejudice, a petitioner must demonstrate that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  In order to assert the fundamental miscarriage of justice exception, "a petitioner must make a showing of actual innocence." *Weeks v. Bowersox*, 119 F.3d 1342, 1350 (8th Cir. 1997) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

In Ground 1, King argues that the trial court violated King's rights under the Confrontation Clause by allowing Enoch Bolden to testify, and he received

ineffective assistance of appellate counsel for failing to raise this claim on direct
appeal.  This argument is different from the related argument he raised on direct
appeal: that the trial court erred in permitting Enoch Bolden to testify and refusing
to grant King's request for a continuance related to this testimony.  Though his
argument on direct appeal referenced the Confrontation Clause, it centered on
King's opportunity to investigate Bolden's testimony and adequately prepare for
trial.  Similarly, the only argument he raised on his post-conviction appeal related
to Bolden's testimony was that he received ineffective assistance of trial counsel
for failure to object to Bolden's testimony regarding his fear of retaliation from the
defendants.  This substantive Confrontation Clause claim was not raised either on
direct appeal or in his postconviction appeal.  King did not fairly present Ground 1
to the state court, so the issue was not preserved for federal habeas review.
Therefore, his claim is procedurally defaulted.

King does allege ineffective assistance of appellate counsel as the cause for
his procedural default.  However, his opportunity to raise this ineffective
assistance of counsel claim was in his post-conviction motion before the trial
court.  He did not raise that claim before the trial court so, to the extent that it
raises a separate claim of ineffective assistance of counsel, it is procedurally
defaulted.  Thus, it may not be used to excuse the procedural default of his

substantive Confrontation Clause claim.  Therefore, Ground 1 cannot be considered for habeas review.

### Remaining Grounds for Relief

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In *Shafer v. Bowersox*, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result.  A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (quoting 28 U.S.C. § 2254(d)(2)) (citing 28 U.S.C. § 2254(e)(1); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

*Ground 2: Permitting Bolden to Testify and Denying Motion to Continue*

In Ground 2, King raises numerous arguments regarding Enoch Bolden's testimony, several of which raise only state law issues. He argues that the trial court erred in allowing Bolden to testify, that he should have been able to conduct additional voir dire on issues related to Bolden's testimony, that the trial court erred in denying his motion for a continuance to prepare for Bolden's testimony, and that the trial court should have excluded Bolden's testimony because of prosecutorial misconduct. The entirety of this claim was presented on direct appeal and rejected by the Missouri Court of Appeals.

In this petition, King also raises allegations that these actions by the trial court violated his rights under the Confrontation Clause. Specifically, he argues that the court's actions in allowing Bolden to testify and denying a continuance for

- 14 -

him to prepare for Bolden's testimony denied him a reasonable opportunity to confront Bolden and prepare a defense.

As to the claim regarding King's desire to voir dire the jury on snitch testimony, the Missouri Court of Appeals stated:

> [King] initially contends that Bolden should not have been permitted to testify because he was held in contempt before trial and excluded as a witness on the fifth day of trial, due to his refusal to testify. [King] argues that he detrimentally relied on the court's ruling excluding Bolden as a witness because it was in effect throughout voir dire, thereby obviating his need to voir dire the venire panel on "snitch testimony."
>
> . . . [I]n light of the evidence against [King], we find it unlikely that the outcome of the trial was affected by [King's] inability to voir dire the panel on snitch testimony.  In addition to Bolden's testimony, two witnesses identified [King] as one of the gunmen seen in the McAlisters' apartment and fleeing from the scene of the crimes.  There was also a piece of paper in the McAlisters' apartment with [King's] address and the name "Twan R. King" written on it.  Accordingly, we cannot say the trial court abused its discretion in failing to exclude Bolden as a witness on this basis.

Resp. Ex. E, at 2-3.  Regarding the request for a continuance to prepare for Bolden's testimony, the Missouri Court of Appeals rejected the claim as follows:

> The trial court reversed its decision to exclude Bolden on the day opening statements were given. [King] maintains the court should have excluded Bolden or granted a continuance until he could better prepare for his opening statement by deposing Bolden.  The record indicates, however, that [King] was able to depose Bolden prior to trial.  Although Bolden refused to answer questions pertaining to his girlfriend, [King] was subsequently able to depose her as well prior to trial. [King] does not contend that Bolden's recalcitrance deprived him of any other relevant information.  Thus, [King] was aware of the nature of Bolden's testimony prior to opening.  As such, we find that the trial court did not abuse its discretion or prejudice [King] by refusing to

exclude Bolden or grant a continuance so as to give [King] additional time to depose Bolden prior to opening statements.

Resp. Ex. E, at 3-4.  As to Bolden's claims of prosecutorial misconduct, he first argues that the government failed to timely disclose letters written by Bolden to the prosecution.  The Missouri Court of Appeals ruled that King did not suffer any prejudice from the late disclosure of these letters:

> The record indicates that [King] was aware of the existence of the letters prior to trial, thus he cannot claim surprise.  On the day after opening, [King] requested that the State disclose any communications in which Bolden requested benefits in exchange for his testimony.  The State turned over four letters to the trial court, which it reviewed *in camera*.  The court then ordered the disclosure of three of the letters to the defense prior to Bolden's testimony. [King] had the opportunity to depose Bolden about the letters on the evening prior to his testimony.  During trial, [King] attacked Bolden's credibility based upon his demands in the letters for numerous benefits from the State in exchange for his testimony.  Defendant does not specify what more, if anything, he would have done had the letters been disclosed earlier. . . .

Resp. Ex. E, at 4-5.  Finally, King argued that the state committed prosecutorial misconduct by inducing the United States Attorney to file federal charges against Bolden to coerce him to testify.  The court rejected the claim on the basis that the allegation was purely speculative, and on the basis that there is no authority stating that the government cannot bring valid charges against its witness to induce that witness to testify.  Resp. Ex. E, at 5.

King argues in his petition that the trial court's alleged errors violated his rights under the Confrontation Clause.  His first argument is that the court should

not have allowed Bolden to testify after he was held in contempt for refusing to

testify and refusing to take the oath.  The Supreme Court has held:

> The Confrontation Clause contains no guarantee that every witness
> called by the prosecution will refrain from giving testimony that is
> marred by forgetfulness, confusion, or evasion.  To the contrary, the
> Confrontation Clause is generally satisfied when the defense is given a
> full and fair opportunity to probe and expose these infirmities through
> cross-examination, thereby calling to the attention of the factfinder the
> reasons for giving scant weight to the witness' testimony.

*Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985).  In this case, King's counsel

had ample opportunity to cross-examine Bolden at trial, and she did so through

several rounds of re-cross examination.  These questions covered all aspects of

Bolden's testimony, including his potential federal charges, the letters he wrote to

the prosecution, and his refusal to testify for several weeks before trial.

Furthermore, he did take an oath to tell the truth before he testified on direct and

cross-examination before the jury, even if he had previously refused to do so.

Therefore, I find that there is no merit to King's allegation that his rights under the

Confrontation Clause were violated.

In reality, King's allegation regarding the trial court's decision to allow

Bolden to testify primarily amounts to a claim of evidentiary error by the state

court, which King is trying to turn into a Confrontation Clause violation.  "A state

court's evidentiary rulings can form the basis for federal habeas relief under the

due process clause only when they were so conspicuously prejudicial or of such

magnitude as to fatally infect the trial and deprive the defendant of due process."

*Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996).  This evidentiary ruling did

not deprive the defendant of due process, and King is not entitled to habeas relief

for this state law evidentiary ruling.  First, King has not articulated exactly what

could have been erroneous about the state court's decision to allow Bolden to

testify after previously being held in contempt.  Once Bolden decided to take the

oath and testify in court, there is no basis for deeming him incompetent to testify.

Furthermore, even had this ruling been erroneous, King has not shown that he was

prejudiced by the decision to allow Bolden to testify given the weight of evidence

against him.  There is no basis for King's bare allegation that the trial court erred

by allowing Bolden to testify.

King also argues that he did not have an opportunity to voir dire the jury

panel regarding snitch testimony, as it related to Bolden's testimony.  "[T]he

conduct of voir dire is generally left to the trial court's sound discretion."

*Nicklasson v. Roper*, 491 F.3d 830, 835 (8th Cir. 2007).  In order for particular

questioning to be "constitutionally compelled . . . it is not enough that such

questions might be helpful.  Rather, the trial court's failure to ask these questions

must render the defendant's trial fundamentally unfair."  *Id.* (quoting *Mu'Min v.

Virginia*, 500 U.S. 415, 425-26 (1991)).

The decision of the Missouri state court regarding King's claimed inability to voir dire jury panel members regarding snitch testimony was not contrary to or an unreasonable application of these federal law principles.  As the Missouri Court of Appeals stated, King does not explain the particular questions he would have asked the jury, other than merely referencing "snitch" testimony.  This lack of specificity makes it difficult to analyze his claim on the merits.  However, regardless of whether Bolden should have been excluded from testifying because of King's inability to question potential jurors about snitch testimony, King has not demonstrated any prejudice from the trial court's decision to allow Bolden to testify on this basis.  The weight of the evidence against King was overwhelming, notwithstanding Bolden's testimony.  King has not demonstrated that his inability to voir dire jurors regarding one particular witness's testimony rendered his trial fundamentally unfair.  Therefore, habeas relief is not warranted on this basis.

King alternatively argues that when the trial court decided to allow the testimony of Enoch Bolden, it should have granted his motion for a continuance to prepare for that testimony.  He argues that he was deprived of a meaningful right to confront Bolden by his inability to adequately prepare for Bolden's testimony.  The Supreme Court has stated that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is

compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (U.S. 1964).  Thus, "a constitutional violation occurs only where the court exhibits an unreasoning and arbitrary insistence upon expeditiousness in the face of justifiable request for delay." *United States v. Bonilla-Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011) (internal quotation marks and citation omitted).  "To prevail, [King] must establish that the court's decision was so egregious that it was fundamentally unfair." *Id.* (internal quotation marks and citation omitted).

The decision of the Missouri state court to deny King's motion for a continuance was not contrary to or an unreasonable application of federal law. The denial was not fundamentally unfair because King's counsel did, in fact, have an opportunity to depose Bolden prior to his testimony.  He also received the letters written by Bolden to the prosecution before he testified and was able to impeach him with their contents.[3]  King presents no basis for his claim that the denial of a continuance prejudiced him in any way.  Therefore, this claim is without merit.

As to his remaining claim of prosecutorial misconduct, King argues that the state impermissibly coerced Bolden to testify by working with the federal government to bring charges against him related to his conduct in this case.  King

---

[3]Because King was able to use these letters in his cross-examination of Bolden, he did not suffer any prejudice by their late production by the government.  Thus, there is no basis for his argument that Bolden's testimony should have been excluded based on this allegation of prosecutorial misconduct.

does not cite any authority that prohibits the federal government from bringing

charges that are appropriate under the law and supported by a proper factual basis.

This sort of inducement does not appear to be substantially different from granting

a witness immunity from prosecution in exchange for his testimony.  Therefore,

this claim does not warrant habeas relief.  The entirety of King's Ground 2 is

without merit.

*Ground 3: Exclusion of Evidence Regarding Adrian McAlister's Misidentification of Ford*

King argues in Ground 3 that the trial court erred in excluding evidence

regarding Adrian McAlister's misidentification of former co-defendant

Christopher Ford.  He claims that the exclusion of this evidence violated his rights

under the Confrontation Clause to meaningfully confront this witness, as the

reliability of her identification was never put before the jury.

At trial, King sought to cross-examine Adrian McAlister regarding her

misidentification of Christopher Ford in a live lineup – by using a photograph of

that lineup as an exhibit – and then argue that her inability to identify Ford cast

doubt on her ability to accurately identify King in a lineup.  This claim was

presented to the Missouri Court of Appeals on direct appeal, but that court ruled

that the claim was not preserved for appellate review because King failed to make

an adequate offer of proof when the trial court prohibited the requested cross-

examination.  However, it then went on to consider his claim on the merits, so I

will consider it in my review as well.  *See Sweet v. Delo*, 125 F.3d 1144, 1150 (8th

Cir. 1997) ("When a state court decides an issue on the merits despite a possible

procedural default, no independent and adequate state ground bars consideration

of that claim by a habeas court.").

Regarding his argument under the Confrontation Clause, King alleges that

he was denied the opportunity meaningfully confront Adrian McAlister regarding

the reliability of her identification of Christopher Ford in the live lineup.

Although the Sixth Amendment protects a broad right to cross-examine witnesses,

"this guarantee . . . is not without limitation." *United States v. Triplett*, 104 F.3d

1074, 1079 (8th Cir. 1997).  "[T]rial judges retain wide latitude insofar as the

Confrontation Clause is concerned to impose reasonable limits on such cross-

examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or

only marginally relevant." *United States v. Klauer*, 856 F.2d 1147, 1149 (8th Cir.

1988).  "Reversal of a [trial] court's decision to limit cross-examination is

warranted, therefore, only where there has been clear abuse of discretion, and a

showing of prejudice to the defendant." *Triplett*, 104 F.3d at 1079 (internal

quotation marks and citation omitted).

In deciding to exclude cross-examination into this area of Adrian McAlister's testimony, the trial court concluded that it was "too big of a leap" to suggest that because she misidentified Christopher Ford in a live lineup, she also could have been mistaken when she correctly identified King and Jackson.  The court explained that there could be many different explanations for Adrian McAlister's misidentification of Ford.  Because King was able to elicit the same information – namely, Adrian McAlister's misidentification of Christopher Ford in a live lineup – through another witness as he sought to elicit through cross-examination of Adrian McAlister, he did not suffer any prejudice from the trial court's determination that the cross-examination was not appropriate.  King has not demonstrated that the outcome of his trial would have been different had he been able to cross-examine Adrian McAlister about this misidentification.  This evidentiary claim therefore does not implicate the Confrontation Clause.

As with Ground 2, this claim essentially challenges a state-law evidentiary ruling, which King is attempting to convert into a Confrontation Clause violation. When the Missouri Court of Appeals addressed this issue as a state-law evidentiary question, it held that King "suffered no prejudice from his inability to cross-examine Adrian regarding her misidentification of Ford, as the evidence was later introduced by other means," as King was able to "elicit[] the misidentification on cross-examination of a police detective and reference[] it in

closing argument."  Resp. Ex. E, at 7.  In making this decision, the Missouri Court

of Appeals did not rule contrary to federal law or unreasonably determine the facts

based on the above analysis.  Therefore, I conclude that this evidentiary ruling did

not violate King's due process rights, and Ground 3 is without merit.

*Ground 4: Exclusion of Evidence Regarding Adrian McAlister's Misidentification*
*of King*

King argues in Ground 4 that the trial court erred in excluding evidence

regarding Adrian McAlister's misidentification of King in a lineup.  King raised

the same claim in his direct appeal.  In this petition, he also argues that the

exclusion of this evidence violated his rights under the Confrontation Clause.  The

circumstances surrounding this argument are confusing, but the Missouri Court of

Appeals summarized them and rejected King's claim as follows:

> On direct examination, Adrian was shown a photograph of
> [King's] lineup, marked "State's Exhibit 87."  Adrian correctly
> identified [King] as the person in position number three.
> On cross-examination, [King] sought to impeach Adrian's
> identification of [King] with an allegedly inconsistent statement from a
> prior hearing on Defendant's motion to suppress identification.
> During the hearing on the motion to suppress, Adrian was
> shown two identical photographs of [King's] lineup.  One of the
> photographs was marked "State's Exhibit 3," while the other
> photograph was marked "Plaintiff's Exhibit 3."  When shown "State's
> Exhibit 3," Adrian correctly identified [King] as the person in position
> number three.  When shown "Plaintiff's Exhibit 3," however, Adrian
> identified the person on the end.
> On cross-examination, [King] sought to point out the
> inconsistency . . . .
> . . .

- 24 -

> Here, [King] failed to ask Adrian any questions during trial
> concerning "Plaintiff's Exhibit 3." [King] only asked her about the
> identification she made from "State's Exhibit 3," which was not
> inconsistent with her identification of [King] from "State's Exhibit 87"
> during trial.  Under these circumstances, we find that the trial court did
> not abuse its discretion in refusing to allow [King] to "impeach"
> Adrian with evidence of Adrian's misidentification of [King] from
> "Plaintiff's Exhibit 3."

Resp. Ex. E, at 7-10.  In affirming the trial court's exclusion of this evidence, the

Missouri Court of Appeals analyzed this proffered evidence as a prior inconsistent

statement.  Because it held that King's counsel did not adequately question Adrian

to lay the foundation for impeachment by a prior inconsistent statement, the court

affirmed the exclusion of trial testimony from the court reporter present at the

suppression hearing regarding Adrian's answers to questions about "Plaintiff's

Exhibit 3."

As explained in Ground 3 above, a trial court's decision to limit cross-

examination only violates the Confrontation Clause if it constituted a "clear abuse

of discretion" or "prejudice[d] the defendant."  *Triplett*, 104 F.3d at 1079.  Adrian

McAlister correctly identified King in the photograph of the lineup shown at trial,

as well as in "State's Exhibit 3" at the suppression hearing.  Further, other

witnesses also identified King as one of the perpetrators.  Allowing cross-

examination into Adrian McAlister's misidentification of King in "Plaintiff's

Exhibit 3" likely would not have affected the outcome of the trial given the weight

of the other evidence against him.  In fact, it may have confused the jury regarding

which identifications even occurred, given the confusion between use of the

exhibit names "State's Exhibit 3" and "Plaintiff's Exhibit 3" in the suppression

hearing.  At best, the jury could have used this impeachment evidence to conclude

that Adrian McAlister misidentified King in a photograph of a lineup – a lineup in

which she correctly identified King when she participated live – shown to her for a

second time in the suppression hearing.  The value of this potential impeachment

is marginal, and the state court's decision to exclude this evidence did not

prejudice King.  Therefore, this ruling by the trial court did not violate King's

rights under the Confrontation Clause.

Rather, this issue is more appropriate analyzed as a state-law evidentiary

ruling.  The trial court's ruling restricting examination into Adrian McAlister's

misidentification of King and the appellate court's decision affirming that ruling

were based on Missouri evidentiary law for admission of prior inconsistent

statements.  "It is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions."  *Brown v. Luebbers*, 371 F.3d 458,

466 (8th Cir. 2004) (internal quotation marks and citation omitted).  Therefore,

this evidentiary claim can only rise to the level of a constitutional violation such as

to support habeas relief if it was "so conspicuously prejudicial or of such

magnitude as to fatally infect the trial and deprive the defendant of due process."

*Parker*, 94 F.3d at 460.  Again, because I found above that King was not

prejudiced by this decision, I conclude that the Missouri Court of Appeals's

decision was not contrary to or an unreasonable application of federal law.

Therefore, I conclude that the claim raised in Ground 4 of King's petition is

without merit.

*Ground 5: Exclusion of Evidence that Mark Smith Lied Under Oath in a Different
Trial*

In Ground 5, King argues that the trial court erred in excluding evidence that

government witness Mark Smith lied under oath in a previous trial.  He claims that

this restriction on his cross-examination of Mark Smith violated his rights under

the Confrontation Clause.  At trial, King was able to elicit testimony from Smith

that he and Dennis McAlister had been co-defendants in a drug case, in which

Smith testified that all of the drugs belonged to him.  The trial court did not allow

King to elicit further testimony that Smith later told his parole officer that some of

the drugs belonged to Dennis McAlister.  King sought to introduce that

information as evidence of Smith's bias in favor of the victim in this case.  King

raised this claim in his direct appeal, but the Missouri Court of Appeals rejected it

and stated:

> Here, the trial court limited the evidence of bias by allowing the
> defendants to elicit that Smith previously testified on Dennis
> McAlister's behalf, but not that Smith may have lied under oath.  Even
> assuming, without deciding, that the trial court abused its discretion,
> we find that any such error was harmless beyond a reasonable doubt. .
> . .

The State's purpose in calling Smith was to strengthen the connection between the defendants and Dennis McAlister.  Smith's testimony linked [King] and Jackson to Dennis McAlister at various times prior to the commission of the crimes charged.  Smith's testimony, however, was not essential to [King's] conviction.

[King] was identified at the scene of the crimes by Adrian McAlister and Kenyon Jackson.  Enoch Bolden testified that he knew [King] as "Twan," that [King] participated in planning to rob Dennis McAlister, and that [King] participated in dividing the spoils after the robbery.  Moreover, a piece of paper was found in Dennis McAlister's apartment that had [King's] address and the name "Twan R. King" written on it.  This evidence was sufficient to support [King's] conviction, notwithstanding the limitation on Smith's cross-examination.

Resp. Ex. E, at 12-13.

King has not shown that the decision of the Missouri Court of Appeals was contrary to or an unreasonable application of federal law.  The exclusion of this evidence did not rise to the level of a violation of King's constitutional rights under the Confrontation Clause.  Regarding limits on cross-examination into a potential bias of a witness specifically, the Supreme Court has stated:

[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. . . . It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination . . . .

*Delaware v. Van Arsdall*, 475 U.S. 673, 679-680 (1986).  The Court in *Van Arsdall* further held that even where there is constitutional error in regard to the

Confrontation Clause, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id*. at 681.  Factors to consider when deciding whether such an error is harmless include the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684.

I conclude that the limit on this testimony did not violate King's rights under the Confrontation Clause.  The trial court did not limit all questioning into Mark Smith's prior testimony.  It allowed King's counsel to elicit the fact that Mark Smith had previously testified on behalf of Dennis McAlister, which is sufficient to show any bias Mark Smith may have had when testifying at King's trial.  Any additional questioning into the fact that he was lying when he testified on behalf of Dennis McAlister would have been of marginal value, as it would not have cast any additional doubt on the reliability of Mark Smith's testimony beyond that raised by any alleged bias.  Thus, the trial court did not violate King's rights under the Confrontation Clause by excluding this marginally relevant evidence.

Furthermore, even if the trial court erred in excluding this evidence, I conclude that it would constitute harmless error beyond a reasonable doubt. The testimony of Mark Smith played a relatively minor role in the prosecution's case, given the strong evidence against King from multiple eyewitnesses and physical evidence found at the scene. The prosecution's case did not rely on Smith's evidence regarding prior interactions between Dennis McAlister and the victims in order to prove King's guilt as to these murders. Any additional evidence of Smith's bias elicited from the proposed cross-examination would not have affected the outcome of the trial. Therefore, I conclude that the state appellate court's determination that the restriction on King's cross-examination of Mark Smith was harmless – if erroneous at all – was not contrary to or an unreasonable application of federal law, and Ground 5 of King's petition is without merit.

*Ground 6: Insufficiency of the Evidence for First-Degree Murder*

In Ground 6, King claims that there was insufficient evidence to support the two counts of first-degree murder for which he was convicted because there was no evidence of deliberation. This ground was raised on direct appeal and rejected by the Missouri Court of Appeals. The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In the § 2254 setting, the petitioner "is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no

rational trier of fact could have found proof of guilt beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  "All conflicting inferences that

arise from the historical facts must be resolved in favor of the prosecution."

*Nance v. Norris*, 392 F.3d 284, 290 (8th Cir. 2004).

Here, King was charged with first-degree murder, among other charges.  As

cited by the Missouri Court of Appeals, "to convict a defendant of first-degree

murder on a theory of accomplice liability, the State must prove that the defendant

personally deliberated upon the murder. [*State v.*] *Rousan*, 961 S.W.2d [831], 841

[(Mo. Ct. App. 1998)]."  Section 565.002(3) of the Missouri Revised Statutes

provides that "[d]eliberation means cool reflection for any length of time no matter

how brief."  There are three circumstances under which deliberation may be

inferred for an accomplice liability theory of first-degree murder:

> [F]irst, the defendant or a co-defendant in the defendant's presence
> made a statement or exhibited conduct indicating an intent to kill prior
> to the murder; second, the defendant knew that a deadly weapon was
> to be used in the commission of a crime and that weapon was later
> used to kill the victim; and third, the defendant participated in the
> killing or continued with a criminal enterprise after it was apparent that
> a victim was to be killed.

*Rousan*, 961 S.W.2d at 841.

The Missouri Court of Appeals summarized the evidence presented at trial and held that deliberation may be inferred in this case under all three of the above circumstances, as follows:

> After planning to rob the McAlisters, [King], Cleveland Jackson, and Christopher Ford armed themselves with guns and burst through the McAlisters' door.  At gunpoint, they ordered Dennis McAlister to get on the living room floor, then dragged Tracy McAlister from her bed to the living room floor as she kicked her feet in desperation.  While on the floor, Tracy pulled a blanket off the couch and used it to cover herself and Adrian.  Then, despite the McAlisters' submissiveness and Dennis McAlister's numerous pleas not to harm his pregnant wife or daughter, the men proceeded to shoot them multiple times.  After the shootings, the men then continued the criminal enterprise by fleeing the scene and returning to Cleveland Jackson's basement where they changed clothes and divided up the cash and jewelry taken from the McAlisters' residence.  They made no effort to check on the victims or procure aid for them.  On these facts, there is sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that [King] participated in and deliberated on the deaths of Dennis and Tracy McAlister.

Resp. Ex. E, at 14-15.

Petitioner has not shown that the decision of the Missouri Court of Appeals was contrary to federal law or resulted from an unreasonable determination of the facts.  The evidence presented at trial through numerous witnesses and physical evidence was consistent with the findings of the jury.  Though King presented an alibi witness on his behalf, the jury made a credibility determination and found beyond a reasonable doubt that King was present and participated in these murders.  The testimonial evidence also supported a finding that King deliberated

on this offense.  On this record, I cannot conclude that no rational trier of fact could have found proof beyond a reasonable doubt that King participated in and deliberated on the deaths of Dennis and Tracy McAlister.  Therefore, his claim that there was insufficient evidence to support his murder convictions fails.

*Ground 7: Ineffective Assistance of Trial Counsel for Failure to Call Quentin Womack as an Alibi Witness*

In Ground 7, King alleges that he received ineffective assistance of counsel because his trial counsel failed to call Quentin Womack as an additional alibi witness.[4]  The Supreme Court set out the standard for ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984).  According to *Strickland*, a petitioner alleging ineffective assistance of counsel must make two showings.  *Id.* at 687.  First, the petitioner must "show that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness."  *Id.* at 687-88.  In this regard, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

---

[4]King's trial counsel called Wendy Womack, King's fiancee, as an alibi witness, but did not call her brother Quentin Womack as an additional alibi witness.  Wendy Womack testified that she had been with King, Quentin Womack, and Quentin Womack's girlfriend at Raging Rivers on the evening of August 4, 1997.  After leaving the water park and driving home through traffic, they arrived at Wendy's parents' house to pick up their daughter and a few other items.  She testified that they then got ready for bed at their apartment and went to sleep a little after midnight, and King slept there the whole night.

assistance."  *Id.* at 689.  The Court in *Strickland* cautioned that "judicial scrutiny of counsel's performance must be highly deferential."  *Id.*

In addition to showing that counsel's assistance was deficient, a petitioner must also demonstrate that he or she was actually prejudiced.  *Id.* at 687. According to *Strickland*, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ."  *Id.*  In order to satisfy the "actual prejudice" standard, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

King raised the same claim in his post-conviction motion and on appeal after its denial.  Applying the *Strickland* standard in this case, the Missouri Court of Appeals concluded that King's trial counsel was not ineffective for failing to call Quentin Womack to testify.  Specifically, the appellate court stated:

> The motion court concluded that Womack could not have provided an
> alibi for [King] at the time the murders occurred; we agree with that
> conclusion.  The State's evidence established that the crimes for which
> [King] was convicted occurred just after midnight on August 5, 1997.
> However, during the evidentiary hearing on [King's] PCR Motion,
> [King] and Womack both testified that [King] was present at
> Womack's parents' home until around 10:30 p.m. on August 4, 1997.
> Womack did not testify that he knew where [King] was *after* [King]
> left Womack's parents' home.  Consequently, because Womack's
> potential trial testimony could not have provided [King] with an alibi
> but, at best, would merely have been cumulative to Womack's sister's
> testimony regarding the trip to the water park and the time [King] left
> Womack's parents' home, Trial Counsel was not ineffective for failing

to call Womack at trial, and the trial court did not err in denying this claim.

Resp. Ex. J, at 9.

The decision of the Missouri appellate court with regard to this claim is not contrary to or an unreasonable application of federal law.  "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy . . . ." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted). Counsel's strategy at trial was not contrary to what other reasonable attorneys may have decided to pursue.  Though there were alternative strategies available to King and his counsel at the time of trial, his counsel's choice of strategy must be given great deference, even if King now believes that a different strategy may have been more beneficial.

King has not produced any evidence to show that the outcome of his trial would have been any different had Quentin Womack been called to testify, given Womack's inability to provide him with an alibi for the time of the murders, and given the fact that any benefit to King's alibi defense that may have been gained through this testimony would have been cumulative to evidence already elicited from another witness.  Because King has failed to demonstrate that trial counsel's performance was deficient and that he was prejudiced as a result of such performance, Ground 7 is without merit.

*Ground 8:[5] Ineffective Assistance of Trial Counsel for Failure to Object to Testimony that Kenyon Jackson and Enoch Bolden Feared the Defendants*

In Ground 8, King alleges that he received ineffective assistance of counsel because his trial counsel failed to object to Kenyon Jackson's testimony that he feared for his life after cooperating with authorities and to Enoch Bolden's testimony that he entered the witness protection program because he feared retaliation from these defendants.  King argues that this testimony constituted prejudicial evidence regarding his propensity to commit other crimes.

King raised the same claim on appeal from the denial of his post-conviction motion.  Applying the *Strickland* standard, the Missouri Court of Appeals concluded that King's trial counsel was not ineffective for failing to object to this testimony.  Specifically, the appellate court concluded:

> [T]he motion court concluded that Trial Counsel's failure to object to Kenyon Jackson's statements did not affect the outcome of [King's] trial given that the statements were not specific to [King] and "given the brutal nature of the murders, fear of the perpetrators would be a normal reaction."  We agree with the motion court's conclusion. . . .
>
> Furthermore, ample other evidence linked [King] to the crimes: Kenyon Jackson had seen [King] with Cleveland Jackson and Ford entering the victims' apartment building immediately prior to and immediately after the shooting; [Adrian McAlister], who was an eyewitness to the murders, identified [King] as one of the participants;

---

[5]This ground was originally labeled as Ground 9 in King's first amended petition. However, because he removed the claim originally labeled as Ground 8 when he filed his second amended petition, I will now consider this claim as Ground 8.  Similarly, the remaining claims in this Order are also discussed using this change in numbering based on King's removal of Ground 8 from his original petition.

Bolden identified [King] as one of the men who returned to Cleveland Jackson's home and divided cash and jewelry; a piece of paper was found in the victims' apartment on which was written a form of [King's] name and his address.  Consequently, in light of all this evidence, we cannot say that Kenyon Jackson's testimony regarding his reason for moving out of his apartment altered the outcome at trial.

Second, Bolden had agreed to testify for the State in exchange for placement in a witness protection program. [King's] co-defendant's attorneys cross-examined Bolden about the agreement under which he was testifying.  On redirect, the State asked Bolden why he had requested witness protection.  Bolden replied that he feared retaliation from [King], Cleveland Jackson, and Ford.  Trial Counsel did not object to this testimony.  On direct appeal, this Court found that the defense had opened the door to Bolden's testimony by cross examining him about his agreement with the State and that the State was entitled to explain or to counteract a negative inference raised by the cross examination; thus, this Court held, an objection to Bolden's redirect testimony regarding his reason for requesting witness protection would have been overruled.  Consequently, in this related proceeding for post-conviction relief, Trial Counsel will not be deemed ineffective for failing to make a non-meritorious objection.  *See Smith v. State*, 324 S.W.3d 497, 500 (Mo. Ct. App. 2010).

Resp. Ex. J, at 10-11.

The conclusion of the Missouri Court of Appeals that King did not receive ineffective assistance of counsel based on the failure to object to this testimony is not contrary to or an unreasonable application of federal law.  As to Kenyon Jackson, even assuming arguendo that the failure to object to this testimony constituted deficient performance, his trial counsel's failure to object does not rise to the level of ineffective assistance under the second prong of *Strickland*.  The evidence presented to the jury concerning King's involvement in the murders was strong, and as the motion court stated, fear of the perpetrators of these actions

would be a normal response.  There is no reasonable probability that the verdict would have been different if his trial counsel had objected.

As to the testimony regarding Enoch Bolden, the state court concluded that the objection would not have had any merit because the testimony was admissible, given that defense counsel had opened the door by asking about Bolden's agreement with the government.  King's claim essentially challenges an evidentiary ruling by the state court.  As discussed above, state evidentiary rulings may only warrant habeas relief if the ruling deprived the petitioner of due process. *See Parker*, 94 F.3d at 460.

As with the testimony from Kenyon Jackson, King's evidentiary challenge does not implicate a federal constitutional right as he has not established that the outcome of his trial would have been different had his counsel objected to this testimony.  Even assuming arguendo that the evidentiary ruling was erroneous, the weight of the evidence against King and the natural response of Bolden to fear retaliation from these defendants after observing their actions about which he testified, this statement did not alter the outcome of his trial.  Accordingly, Ground 8 of King's petition is without merit.

*Ground 9: Ineffective Assistance of Trial Counsel for Failure to Use the Correct Exhibit to Impeach Adrian McAlister's Identification of King*

Ground 9 of King's petition is closely related to Ground 4 above, which is a

claim that the trial court erred in precluding evidence of Adrian McAlister's

misidentification of King in a lineup.  In Ground 9, King argues that he received

ineffective assistance of trial counsel for failure to impeach Adrian McAlister's

identification of King through evidence of a prior misidentification at the

suppression hearing.  King presented this claim in post-conviction motion, and his

trial counsel testified at the evidentiary hearing that it was not a strategic decision

to use State's Exhibit 3 rather than Plaintiff's Exhibit 3.  She testified that it

caused some confusion, and she "should have used the same photo that the state

was using.  That would have made it certainly much more clear."  Resp. Ex. F, at

57-58.  King advanced this claim on his appeal from the denial of his post-

conviction motion.  The Missouri Court of Appeals held that King's trial counsel

was not ineffective under *Strickland* and rejected the claim as follows:

> At the hearing on [King's] PCR Motion, Trial Counsel testified
> that Plaintiff's Exhibit 3 was exactly the same as the State's Exhibit 3
> and that using two exact copies of the same photograph and using the
> term "Plaintiff's Exhibit" caused some confusion.  Trial Counsel also
> testified that she had tried to impeach [Adrian McAlister] at trial by
> questioning [Adrian McAlister's] conflicting previous identifications
> of [King] in the State's Exhibit 3 and of the man standing in the fifth
> position in Plaintiff's Exhibit 3.  When [Adrian McAlister] responded
> that she did not remember identifying anyone other than [King], Trial
> Counsel tried to refresh [Adrian McAlister's] recollection by showing
> [Adrian McAlister] the State's Exhibit 3, which was an exact copy of
> Plaintiff's Exhibit 3.  [Adrian McAlister] repeated that she did not
> remember identifying anyone other than [King].

Based on the record before us, [King] has failed to establish that the outcome of trial would have been different had Trial Counsel used Plaintiff's Exhibit 3 instead of the State's Exhibit 3 in attempting to impeach [Adrian McAlister's] identification of [King].  Significantly, Trial Counsel testified that the State's Exhibit 3 was an exact copy of Plaintiff's Exhibit 3.  Trial Counsel also testified that Plaintiff's Exhibit 3 was actually a defense exhibit.  Furthermore, as the State notes in its responsive brief, impeaching [Adrian McAlister] by showing her Plaintiff's Exhibit 3 would have done nothing to alter the outcome of trial given the ample other evidence pointing to [King's] guilt.  Kenyon Jackson, a resident in the victims' apartment building who had observed [King], Jackson, and Ford entering the apartment building just before the shooting and then fleeing shortly after the shooting, identified [King].  Bolden, Cleveland Jackson's cousin, identified [King] as one of the three men who returned to Jackson's home after the shooting and divided cash and jewelry taken from the victims.  A piece of paper was found in the victims' apartment which contained [King's] name and his address.

Consequently, because there is no reasonable probability that the outcome of [King's] trial would have been different had Trial Counsel shown [Adrian McAlister] Plaintiff's Exhibit 3, the trial court did not err in denying this claim.

Resp. Ex. J, at 6-7.

The conclusion of the Missouri Court of Appeals that King did not receive

ineffective assistance of counsel based on the failure to use Plaintiff's Exhibit 3 to

impeach Adrian McAlister's identification of King was not contrary to or an

unreasonable application of federal law.  Even if trial counsel erred in failing to

use Plaintiff's Exhibit 3 to refresh Adrian McAlister's recollection of her prior

misidentification of King, petitioner has not demonstrated under the second prong

of *Strickland* that the outcome of his trial would have been different had counsel

done so.  Adrian McAlister did not remember identifying the fifth man in the

lineup when King's trial counsel showed her State's Exhibit 3, which was an exact copy of Plaintiff's Exhibit 3.  There is no reason to believe that she would have conceded her prior misidentification had she been shown a copy of the exact same photograph, simply labeled with a different exhibit number.  Furthermore, even if King's trial counsel had laid the proper foundation to impeach Adrian McAlister's identification through the testimony of the court reporter from the suppression hearing, there was ample evidence supporting King's guilt on these charges, as discussed in Ground 4 above.  There is not a reasonable probability that the jury verdict would have been different but for trial counsel's failure to use Plaintiff's Exhibit 3.  Therefore, this claim of ineffective assistance of counsel is without merit.

*Ground 10: Recusal of Appellate Panel for Conflict of Interest*

In Ground 10, King argues that he was denied the right to a conflict-free and meaningful review on appeal because Judge Gary Gaertner – who was the Assistant United States Attorney involved in the federal charges against Enoch Bolden – sat on the panel for his post-conviction appeal.  He also argues that Judges Patricia Cohen and Mary Kay Hoff could not be impartial because they sat on the same panel as Judge Gaertner.  By the time that King filed his second amended petition, the Missouri Court of Appeals had already granted his motion to recall the mandate.  The court withdrew its previous opinion and resubmitted

the case to a new panel without Judge Gaertner, but including the same two judges
that previously heard the case: Judge Cohen and Judge Hoff.  As to Judge
Gaertner's conflict of interest, I conclude that King has already received relief on
this claim, as his claim has been resubmitted and evaluated by a panel that did not
include Judge Gaertner.  Therefore, I do not find any basis for habeas relief on this
claim.

As to the alleged bias of the other panel members, Judge Cohen and Judge
Hoff, King does not provide any basis for claiming that they should have recused
themselves from the second panel.  To the extent that this challenges a state
court's decision on state procedural rules for conflicts of interest, it is not
cognizable on habeas review.  *See Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir.
1989) (holding that the petitioner did not allege a valid due process violation for
an "alleged violation of a state rule concerning post-conviction proceedings, an
area in which a defendant is not necessarily afforded constitutional protections").
Therefore, I conclude that this claim is not a valid subject for habeas review, and I
will not consider it.

## V.    <u>Pending Motions</u>

King has also filed a motion for the appointment of counsel and a motion
requesting the court consider a certain trial exhibit as an exhibit to his petition.  He

also filed a motion to amend or correct his first amended petition.  He is not entitled to appointment of counsel, and his additional motions are without merit.

There is no constitutional or statutory right to appointed counsel in a civil case.  *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984).  In determining whether to appoint counsel, the Court considers several factors including (1) whether the plaintiff has presented non-frivolous allegations supporting his prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex.  *See Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990); *In re Lane*, 801 F.2d 1040, 1043-44 (8th Cir. 1986); *Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Upon consideration of the above-listed factors, I find that appointment of counsel is not warranted in this case.  The claims and underlying facts of this case are relatively straightforward and do not involve any complex legal issues.  Moreover, based on petitioner's presentation of the issues in his petition, he seems quite capable of litigating this action on his own.  Therefore, his motion for appointment of counsel will be denied.

Petitioner also requests that I accept trial exhibit 97, which is a letter written from Enoch Bolden to the prosecution, as petitioner's Exhibit G to his petition.  I do not need to consider each individual exhibit presented at trial in order to understand the legal issues presented in King's petition.  To the extent that this motion requests that I order the state of Missouri to produce that particular piece of evidence, I do not believe such action is necessary.  Therefore, I will deny the motion.

King also filed a motion to amend or correct his first amended petition. After that filing, King did file a second amended petition.  Therefore, I will deny his motion to file a second amended petition as moot, as I have already considered the claims raised in his second amended petition.

## VI.   Certificate of Appealability

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A).  To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right.  *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.

1997).  I find that reasonable jurists could not differ on any of King's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petitions of Antoine King for writ of habeas corpus [#1, 14, 22] pursuant to 28 U.S.C. § 2254 are DENIED.

**IT IS FURTHER ORDERED** that the petitioner's motion to amend his petition by deleting Ground 8 [#25] is GRANTED.

**IT IS FURTHER ORDERED** that the petitioner's motion to appoint counsel [#23] is DENIED.

**IT IS FURTHER ORDERED** that the petitioner's motion related to a particular trial exhibit [#16] is DENIED.

**IT IS FURTHER ORDERED** that petitioner's motion to amend or correct his petition [#21] is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2013.